**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        No. CR 17-1630 RB

MATTHEW J J LYONS,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant's Motion to Dismiss Count 3 of the Indictment, filed on July 14, 2017. (Doc. 27.) Having considered the submissions of the parties and relevant law, the Court will **DENY** the motion.

## I.      Background

The Government filed a Criminal Complaint against Mr. Matthew Lyons on April 10, 2017, under 17 U.S.C. §§ 111(a)(1) and 758, "which make[] it a crime for any person to Impede, Resist, and Assault a Federal Officer and to flee at a high speed from an immigration checkpoint." (Doc. 1 ¶ 2.) Lyons now moves to dismiss Count 3 of the Indictment, which charges him with fleeing and evading the checkpoint. (*See* Docs. 27; 19.) Lyons alleges that the statute is unconstitutionally vague. (*Id.*)

### A.      The Facts as Alleged in the Complaint

The facts underlying the Complaint are as follows: on April 6, 2017, Lyons entered a United States Border Patrol (USBP) checkpoint on Highway 54. (Doc. 1 ¶ 4.) The USBP agent asked Lyons and his front seat passenger if they were citizens, and they both responded "yes." (*Id.* ¶ 5.) The agent noticed a back seat passenger and asked Lyons to roll down the rear window.

(*Id.*) Lyons stated that the passenger was his minor son and refused to roll down the window. (*Id.*)

Lyons asked the agent if he was being detained; the agent said he was. (*Id.* ¶ 6.) The agent walked toward the station to notify other agents, and Lyons fled the checkpoint at a high rate of speed. (*Id.*) USBP agents pursued Lyons with their lights and sirens activated. (*Id.* ¶ 7.) The agents caught up to Lyons' vehicle about half a mile beyond the checkpoint, and the two vehicles reached speeds of approximately 90 miles per hour for 1.3 miles before Lyons stopped. (*Id.* ¶ 8.)

A second USBP agent asked Lyons why he fled, "Lyons responded that he knew his rights and . . . was not required to stop." (*Id.* ¶ 9.) Lyons refused to provide identification or to step out of the vehicle. (*Id.*) The agent, who was unable to see Lyons' hands, decided to extract him from the vehicle. (*Id.*) When the agent opened the door and reached for Lyons' seatbelt release, Lyons slapped the agent's "hand and attempted to strike [the agent] with his elbow." (*Id.*) A third agent arrived to assist, and the agents "attempted to get Lyons to the ground in order to handcuff him." (*Id.* ¶ 10.) Lyons put one of the agents in a headlock, and the other agent struck Lyons in both legs with a baton, picked Lyons up, "and forcefully took him to the ground." (*Id.*) Lyons continued to resist, the agent struck him once more in the legs with a baton, and the agents were finally able to get a handcuff on him. (*Id.* ¶ 11.) At that point, Lyons complied, and the agents handcuffed him, placed him under arrest, read him his rights, and transported him to the USBP checkpoint station. (*Id.* ¶¶ 11–12.)

The Government filed a three-count Indictment on June 21, 2017. (Doc. 19.) Counts 1 and 2 charge Lyons with "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing] with" law enforcement officers in violation of 18 U.S.C. § 111.

(*Id.* at 1.) Count 3 charges Lyons with "unlawfully, knowingly and intentionally fle[eing] and evad[ing] a checkpoint operated by United States Border Patrol and any other Federal law enforcement agency, in a motor vehicle, . . . in excess of the legal speed limit" in violation of 18 U.S.C. § 758. (*Id.* at 3.)

## II.      Legal Standard

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (citations omitted).

"A statute is impermissibly vague 'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.'" *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009) (quoting *Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005) (internal citation and quotation marks omitted)). "Additionally, a statute that authorizes or encourages arbitrary and discriminatory enforcement can be impermissibly vague." *Id.* (citing *Ward*, 398 F.3d at 1251). Vague criminal statutes violate due process. *See Johnson v. United States*, 135 S. Ct. 2551, 2556–57 (citations omitted).

## III.      Analysis

Lyons asserts that 18 U.S.C. § 758 is unconstitutionally vague. Section 758 provides:

Whoever flees or evades a checkpoint operated by the Immigration and Naturalization Service, or any other Federal law enforcement agency, in a motor vehicle and flees Federal, State, or local law enforcement agents in excess of the legal speed limit shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 758. Lyons argues that § 758 is vague both on its face and as applied.

**A. The Court need not determine whether § 758 is unconstitutionally vague on its face.**

Lyons argues that § 758 is vague on its face for two reasons: (1) it lacks adequate notice in that "it fails to define 'flee' or 'evade,' such that a person [of] ordinary intelligence would understand what behavior is proscribed"; and (2) "it fails to place any meaningful temporal or spatial limits on its proscriptions and provides no guidance to a person of ordinary intelligence or to law enforcement how far around the checkpoint the 'no speeding' zone extends." (Doc. 27 at 5.) Lyons' arguments do not implicate First Amendment freedoms.

"'It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined' on an as-applied basis." *Johnson*, 135 S. Ct. at 2580 (2015) (Alito, J., dissenting) (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975) (internal citation omitted)). "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Id.* (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)). "Thus, in a due process vagueness case, [the Court] will hold that a law is facially invalid 'only if the enactment is impermissibly vague in *all* of its applications.'" *Id.* (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982) (emphasis added); citing *Chapman v. United States*, 500 U.S. 453, 467 (1991)). The Court begins, then, by examining the statute as "applied to the facts of this case." *Chapman*, 500 U.S. at 467 (citation omitted)

**B. Section 758 is not unconstitutionally vague as applied to the facts of this case.**

Lyons argues the statute is unconstitutionally vague as applied to the facts as alleged here, because it gave him "no reasonable chance of knowing how he might avoid federal

prosecution on the day of his arrest." (Doc. 27 at 9.) Specifically, Lyons argues that "the checkpoint has no clear signage regarding speed limits" until the 70 miles per hour sign where the lane merges with the highway. (*Id.*) "The last posted speed limit before the checkpoint indicates that 35 miles per hour is the maximum permitted speed, but there are no further speed indicators until after the checkpoint" where it indicates the limit is 70 miles per hour. (*Id.* at 9–10.) "Since it would be neither safe, nor presumably legal, to enter the highway at 35 miles per hour, no reasonable person would be able to assess what the permitted rate of speed is along the stretch of road that must be driven to exit the checkpoint." (*Id.* at 10.) The Court finds this reasoning unpersuasive, as the USBP agents did not stop Lyons in the 35 miles per hour zone. Instead, the allegations establish that after an agent clearly told Lyons he was being detained, Lyons left the checkpoint at a high rate of speed, the agents pursued and caught up to Lyons' vehicle about half a mile beyond the checkpoint, and the two vehicles reached speeds of approximately 90 miles per hour for 1.3 miles before Lyons stopped. (*Id.* ¶¶ 6–8.) This behavior is clearly proscribed by the statute.

Lyons further asserts that under the circumstances of his case, he "could have no reasonable way of foreseeing that border patrol officers—who are not state law enforcement officers and who have no authority to enforce state traffic laws such as speeding—would subjectively determine his speed to be excessive." (Doc. 27 at 10 (citations omitted).) Moreover, Lyons asserts USBP agents "are not instructed or trained to assess the speed of vehicles," nor do their cars have "radar guns[] or calibrated and maintained speedometers." (*Id.*)

Lyons' arguments are unavailing. That USBP officers do not have authority to enforce state traffic laws is irrelevant; the statute at issue is federal, it does not depend on the

enforcement of state traffic laws.[1] Additionally, Lyons' assertion that USBP agents are not trained in assessing the speed of vehicles is, at its heart, an issue for the jury.

Ultimately, the Court finds that a reasonable person would know that—where an agent told Lyons he was being detained, Lyons then fled the checkpoint at a high rate of speed and drove for approximately 1.3 miles at speeds of up to 90 miles per hour with USBP agents behind him with their lights and sirens activated—he was at risk of violating this statute. *See Maynard*, 486 U.S. at 361.

Because Lyons' conduct, as alleged in the Indictment, is clearly prohibited by 18 U.S.C. § 758, his argument that the statute is unconstitutionally vague as applied fails. Accordingly, the Court need not address Lyons' arguments regarding whether the statute is vague on its face.[2]

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss Count 3 of the Indictment (Doc. 27) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

---

[1] Lyons also asserts that because the agents lacked authority to make traffic stops, their stop of his "truck amounted to a citizen's arrest." (Doc. 27 at 11.) This argument fails for the reasons stated above.

[2] Lyons argues § 758 is vague on its face because the statute fails to define "flees" or "evades," it does not give a temporal or spatial limitation, and because "a person of ordinary intelligence would [not] understand how to avoid transgression." (Doc. 27 at 5–9.) The Court agrees with the Government, however, that the terms "flee" and "evade" "connote a deceptive behavior that requires the defendant to willfully act with the intention of avoiding contact with law enforcement." (Doc. 29 at 5.) The statute's temporal and spatial limitations are also tied to a person's intent to flee or evade the checkpoint. That the statute has a *mens rea* requirement tends to mitigate any objection due to vagueness. *Franklin-El*, 554 F.3d at 911 (noting that "[t]he Supreme Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed") (quotations omitted).